**SO ORDERED,**



**Judge Jason D. Woodard**

**United States Bankruptcy Judge**

The Order of the Court is set forth below. The case docket reflects the date entered.

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

| | | | |
|---|---|---|---|
| In re: | ) | | |
| | ) | | |
| LAURA R. DOLER, | ) | Case No. | 20-12244-JDW |
| | ) | | |
| Debtor. | ) | Chapter | 13 |

MEMORANDUM OPINION AND ORDER

This matter came before the Court for hearing on the *Motion to Compromise and Authorize Settlement* (the "Motion") (Dkt. # 47) filed by the debtor. The debtor has a confirmed bankruptcy plan that provides for payment of her taxes but no payment to general unsecured creditors. She meets the statutory requirements for such a plan, but has now received unexpected litigation proceeds. The debtor contends that the proceeds should be paid to the priority tax claims, which will allow her to pay off her case early. The

1

trustee contends that the proceeds should be distributed to nonpriority unsecured claims. The Court concludes that the proceeds must be disbursed to the priority unsecured creditors and the Motion is due to be granted.

## I. JURISDICTION

This Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157(a) and 1334, and the *United States District Court for the Northern District of Mississippi's Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* dated August 6, 1984. This is a core proceeding as set forth in 28 U.S.C. § 157(b)(2)(A), (L), and (O).

## II. FACTS & PROCEDURAL HISTORY

The parties have stipulated to the following facts:[1]

1. The Debtor initiated this proceeding with the filing of a voluntary petition for relief (Dkt. #1) on July 2, 2020.
2. According to Form 122C-1 Chapter 13 Statement of Your Current Monthly Income and Calculation of Commitment Period (Dkt. #11) the Debtor is considered below the median income.
3. The Second Amended Chapter 13 Plan was confirmed pursuant to the Order Confirming Chapter 13 Plan (Dkt. #45) (the "Plan").
4. The Plan is for a term of 60 months and includes the following relevant provisions: (a) payment of the priority unsecured claim (Clm. #8) of Internal Revenue Service in the amount of $14,364.60; (b) payment of the priority unsecured claim (Clm. #6) of Mississippi Department of Revenue in the amount of

---

[1] (Dkt. # 60). The parties' stipulations are reproduced verbatim in the numbered paragraphs here. Additionally, neither the debtor nor trustee dispute that the proceeds are property of the bankruptcy estate according to 11 U.S.C. § 541 or that the non-exempt portion of the proceeds should be distributed to creditors.

2

$557.05; and (c) no distribution to nonpriority claims which have been timely filed in the amount of $29,200.76.
5. On April 28, 2020, the Debtor retained the law firm of Watson & Norris, PLLC to pursue a civil claim against Capstone Logistics, LLC for a violation of the Family Medical Leave Act (the "Claim"). The employment of Watson & Norris, PLLC was approved by this Court on September 1, 2020 (Dkt. #31).
6. The Claim was settled and the Debtor filed the Motion to Compromise and Authorize Settlement (Dkt. #47) (the "Motion") on November 9, 2020. As part of the relief requested, the Debtor requested in paragraph 8 that she "should be authorized to receive $3,791.25 as the exempt portion of the settlement proceeds and the remaining $1,263.75 should be paid to the Chapter 13 Trustee for distribution to priority claims after payment of the Trustee's normal compensation." It had been previously agreed to by the parties that the amount of $3,791.25 was exempt as evidenced by the withdrawal (Dkt. #42) of the Trustee's Amended Objection to Exemptions (Dkt. #17) and Objection to Exemptions (Dkt. #15).
7. The Trustee's Response to Motion to Compromise and Authorize Settlement (Dkt. #53) was filed on November 19, 2020. In the response, the Trustee denied "that the nonexempt portion of the settlement proceeds should be disbursed first to priority unsecured claims. It is the Trustee's position that such proceeds are to be disbursed to nonpriority unsecured claims."
8. On December 15, 2020, the Interlocutory Agreed Order Approving Settlement (Dkt. #54) was entered which approved the settlement, leaving the disputed issue of the Proceeds to be determined pursuant to a final order from this Court.

In addition to the Motion, the debtor has now filed a *Motion to Modify the Chapter 13 Plan* (Dkt. # 65). That motion requests that the non-exempt settlement proceeds be "paid to the Internal Revenue Service on its priority unsecured claim" and, therefore, reduce her plan period "from 60 months to the number of months required to complete the Chapter 13 Plan as calculated by the Trustee." *Id.* The trustee opposes the modification (Dkt. # 66).

3

The debtor is a below median income debtor, which means she is required to pay her projected disposable income over 36 months.[2] Because that income is insufficient to pay the tax claims in full over 36 months, she elected to make payments over the 60-month maximum allowed by the Bankruptcy Code.[3] Even when paying her projected disposable income over the full 60 months, she still does not have sufficient income to pay anything to general unsecured creditors.[4] If the litigation proceeds are applied to the tax claims, the taxes will be paid quicker and her plan term can be shortened.

### III. CONCLUSIONS OF LAW

"The structure of the Bankruptcy Code reflects a decision by Congress to prefer certain categories of claims over other categories of claims."[5] "Secured creditors are highest on the priority list, for they must receive the proceeds of the collateral that secures their debts. Special classes of creditors. . . come next."[6] 11 U.S.C. § 507(a)(1)-(10) lists those "special classes" and governs the order in which each is paid. Eighth in that priority waterfall are "allowed unsecured claims of governmental units."[7] "The eighth priority for taxes reflects a public policy decision that tax obligations owed to governmental units

---

[2] (Dkt. # 11). *See also* 11 U.S.C. § 1325(b)(4)(a)(i).
[3] (Dkt. # 45). *See also* 11 U.S.C. §1325(b)(4).
[4] (Dkt. # 45, p. 5, Section 5.1).
[5] 4 *Collier on Bankruptcy*, ¶ 507.02[1], p. 507-13 (16th ed. 2019).
[6] *Czyzewski v. Jevic Holding Corp.*, 137 S.Ct. 973, 979 (2017) (internal citations omitted).
[7] 11 U.S.C. § 507(a)(8).

deserve priority of payment."[8] After distributions to the priority unsecured creditors listed in § 507, "[t]hen come low-priority creditors, including general unsecured creditors."[9]

"[T]he proper role for the courts should be to interpret statutes by their plain meaning."[10] Section 507 is clear that priority unsecured creditors are to receive distributions before nonpriority unsecured creditors. Because of that clear statutory language, these proceeds must be distributed to priority unsecured creditors first. In other words, the taxes must be paid before general unsecured creditors.

The trustee argues that this Court's decision in *In re Wolfe* is instructive.[11] In *Wolfe,* the trustee objected to confirmation of a chapter 13 plan because the debtors "fail[ed] to disclose all assets and liabilities as required by 11 U.S.C. § 521(a)(1)(B)(i)" and the plan "[did] not provide for payment of all of the Debtors' projected disposable income to nonpriority unsecured creditors."[12] The dispute centered on "$3,000.00 of non-exempt cash belonging to the Debtors currently in their savings account."[13] The debtors argued that the $3,000.00 "[did not] have to be turned over to the Trustee for

---

[8] *See supra* note 5, at ¶ 507.02[1][e], p. 507-14 (16th ed. 2019).
[9] *See Jevic Holding Corp.*, 137 S.Ct. 973.
[10] *In re Bloebaum*, 311 B.R. 473, 474 (Bankr. W.D. Tex. 2004) (citing *Lamie v. U.S. Tr.*, 124 S.Ct. 1023, 1034 (2004)).
[11] Case No. 20-11202-JDW.
[12] *Id.* at (Dkt. # 18, p. 2, ¶¶ 4, 7).
[13] *Id.* at (Dkt. # 30, p. 1).

5

distribution because the Plan satisfie[d] the best interest of the creditors test in Section. . . 1325(a)(4) of the Bankruptcy Code."[14] The trustee argued that turnover of the funds "[would] result in an increased distribution to nonpriority unsecured creditors."[15] The Court sustained the trustee's objection and the debtors were ordered to amend their schedules and turn over the balance of all non-exempt cash in the savings account to the trustee for distribution to nonpriority unsecured creditors.[16] This dispute is different. The debtor is not arguing that she should retain the proceeds; rather, she argues that "the nonexempt funds. . . should be distributed to the IRS to be applied towards its priority claim. . ." (Dkt. # 62, p. 5).

This case is also inapposite from *In re Jackson*.[17] There, the debtors sought to use nonexempt insurance proceeds to cure plan payment delinquencies.[18] The trustee objected and argued that the money should instead be paid to unsecured creditors.[19] In ruling for the trustee, the Court recognized that secured creditors are protected by their collateral, but unsecured creditors "bear the risk of non-payment should [a] plan fail."[20] The trustee analogizes *Jackson* to this case, arguing that the IRS, whose claims are

---

[14] *Id.* at 2.
[15] *Id.*
[16] *Id.*
[17] Case No. 17-13753-JDW.
[18] *Id.* at (Dkt. # 43).
[19] *Id.*
[20] *Id.* at 3.

6

nondischargable, should be treated like secured creditors, who are protected by their collateral.[21] That analogy falls flat. If this case fails, no debts will be discharged so general unsecured creditors will be in the same posture as the tax claims. Additionally, the debts in *Jackson* were in two different silos: secured creditors protected by their collateral should the case fail, and unsecured creditors who had no protection.[22] The debts at issue here are in the same unsecured silo. Congress has made clear that, among unsecured claims, tax claims have priority over general unsecured claims.[23]

This result is not great for the non-priority unsecured creditors. But the debtor is below median income and has no projected disposable income, so she is not required to pay general unsecured creditors[24] and is entitled to a discharge in 36 months.[25] The debtor is not acting in bad faith in doing what the Bankruptcy Code allows. The money should be disbursed to priority unsecured creditors.

---

[21] *See generally* 11 U.S.C. § 523(a).
[22] Case No. 17-13753-JDW (Dkt. # 43).
[23] *In re Bennett*, 237 B.R. 918, 923 (Bankr. N.D. Tex. 1999) ("In referring to priority debts, [Section] 507 of the Bankruptcy Code means unsecured claims which Congress granted preferential payment treatment over general unsecured creditors' claims").
[24] "[T]he Supreme Court [has] made clear that the Code requires courts to treat above- and below-median income debtors' 'disposable income[s]' differently." *Matter of Diaz*, 972 F.3d 713, 718 (5th Cir. 2020) (citing *Hamilton v. Lanning*, 560 U.S. 505 (2010)).
[25] 11 U.S.C. § 1322(d)(2). *See also In re Hill*, 572 B.R. 793, 798 (Bankr. N.D. Ga. 2017) ("[T]he Debtor was a below median income debtor and her applicable commitment period would have been 36 months. . ."). The result here may be different if the debtor was above-median income and her plan a 60-month plan.

## IV. CONCLUSION

Accordingly, it is **ORDERED, ADJUDGED,** and **DECREED** that the Motion (Dkt. # 47) is **GRANTED.**

## END OF ORDER ##